UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


UNITED STATES OF AMERICA ex rel.  :
REKHA VASUDEVA and KARAN   :
VASUDEVA,                        :
     Plaintiffs,           :
                              :
        v.                :     C.A. No. 11-114ML
                              :
ANJAN DUTTA-GUPTA, INDRANI   :
DUTTA-GUPTA, AMRITA DUTTA-   :
GUPTA, and RALPH M. MARIANO,  :
        Defendants.       :


## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

     In 2006, Relators Rekha Vasudeva and Karan Vasudeva ("Relators") brought this

whistleblower *qui tam* suit under the False Claims Act ("FCA") alleging a criminal scheme of

billing the United States Navy for work not performed and sharing the proceeds of the scheme

among the individuals and entities participating in the conspiracy. The Relators cooperated with

the governmental investigation triggered by their claim, which led to the exposure of a $17.9

million theft from the United States Navy. Ultimately, six criminal defendants were convicted

for their role in the scheme, including "the mastermind" and "most culpable," Ralph M. Mariano,

who pled guilty to theft from the government (among other claims) on May 30, 2013. United

States v. Mariano, CR No. 12-61-01ML (D.R.I. May 30, 2013) (ECF No. 155 at 26). After his

plea, but before sentencing, Mariano made filings that denied his guilt and attempted to shift the

blame to what he claimed was the government's negligent investigation. As a result, Mariano

was sentenced to ten years of incarceration, near the top of a guidelines range that did not take

cognizance of his supposed acceptance of responsibility at the time of the plea. This harsh

sentence has been summarily affirmed.  United States v. Mariano, No. 13-2441, Judgment (1st

Cir. Oct. 9, 2014).  At sentencing, the Court explained the unusually long sentence imposed on

Mariano, a white-collar first-offender:

> I consider the devastation you left in your wake, not only to your own family, to
> your friends, to the taxpayers, the Navy and all of those people who lost their jobs
> who had to dip into their savings, who could not find a job that was as well
> paying, whose lives were absolutely devastated by you all because you wanted to
> be a big shot.

Mariano, CR No. 12-61-01ML (D.R.I. Nov. 1, 2013) (ECF No. 155 at 36).

Mariano is a defendant in this *qui tam* action; he has propounded counterclaims against

the Relators accusing them of malicious prosecution, defamation and violation of federal privacy

laws.  Consistent with his unsuccessful attempt to villainize the government for his own heinous

criminal conduct, Mariano's counterclaim asks this Court to unlock the door to allow him

discovery on his theory that the Relators' conduct in disclosing "incendiary allegations" to the

government caused him to be defamed and wrongfully accused of "masterminding a bribery and

kickback scheme that never occurred."  ECF No. 62 ¶ 38.  The Relators have moved to dismiss

the counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) – their motion

challenges whether an FCA whistleblower whose *qui tam* action resulted in the unraveling of a

massive criminal scheme and successful criminal prosecutions is nevertheless susceptible to civil

liability for making the allegations.  I find that the Relators cannot be found liable under such

circumstances; for the reasons that follow, I recommend that the Relators' motion to dismiss be

granted. [1]  ECF No. 67.

---

[1] While this motion to dismiss Mariano's counterclaim was pending, this Court considered motions to dismiss the
*qui tam* complaint filed by two of Mariano's codefendants based on the applicable statute of limitations.  Because
the motions raise an issue already framed in a case in which the United States Supreme Court recently granted
certiorari, this Court stayed them.  See Text Order (Oct. 10, 2014).  The stay does not affect the motion to dismiss
Mariano's counterclaims pending before me.

# I.     PROCEDURAL BACKGROUND[2]

The Relators brought their *qui tam* complaint in May 2006 in the Northern District of Georgia under the FCA, 31 U.S.C. § 3729, alleging a scheme of fraudulent invoices, bribery and kickbacks that featured Mariano as the Navy insider at the epicenter of an interconnected web of Navy contractor/subcontractors.  ECF No. 1.  The complaint alleged that the Relators became aware of the criminal activity when Relator Rekha Vasudeva, who was working for a Navy subcontractor, became concerned that her company was receiving payments indirectly from the Navy, yet was not performing any work.  Their *qui tam* complaint describes how payments were made to subcontractors for dummy work and how the stolen proceeds eventually made their way back to Mariano, among others.  Id. ¶¶ 56-58.  As required by FCA, the complaint was filed under seal and served on the government to allow the United States time to decide whether to intervene and take over the suit.  31 U.S.C. § 3730(a)(2).  Also as required by FCA, the Relators provided the government with a "written disclosure of substantially all material evidence and information the [Relators] possess" to assist the government with its decision on intervention ("the investigative report").  31 U.S.C. § 3730(b)(2); ECF No. 1 ¶¶ 20-22.  As a result, in June 2007, the government obtained a stay of the civil case and launched an extensive criminal investigation based on the Relators' allegations.

The criminal investigation went on for four years[3] and involved special agents from multiple agencies, forensic accounting, cooperating witnesses and audio and video surveillance. See Mariano, CR No. 12-61-01ML (D.R.I. Feb. 3, 2011) (ECF No. 3).  In the course of the

---

[2] These facts are taken from the public docket in this case and the criminal cases triggered by the Relators' *qui tam* complaint, all of which are susceptible of judicial notice in connection with a motion under Fed. R. Civ. P. 12(b)(6). In re Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 8 (1st Cir. 1999) (court can take judicial notice of its own docket).

[3] In March 2011, with the criminal proceedings underway, the *qui tam* action was transferred from the Northern District of Georgia to the District of Rhode Island, where it continued to be stayed and under seal.  ECF Nos. 17, 21.

investigation, on October 27, 2009, the Assistant United States Attorneys who were conducting the investigation, and who prosecuted the criminal cases, interviewed the Relators in the presence of agents from the Federal Bureau of Investigation ("FBI"), the Naval Criminal Investigative Service and the Internal Revenue Service ("IRS"). ECF No. 62 ¶ 23. Ultimately, the investigation culminated in the disclosure that $17.9 million had been stolen from the Navy; a criminal complaint was filed on February 3, 2011, followed by criminal prosecutions against six defendants, including Mariano's prosecution by indictment. Mariano, CR No. 12-61-01ML (D.R.I. Apr. 26, 2012). By August 2011, three of Mariano's coconspirators had pled guilty to paying bribes and kickbacks to Mariano in consideration for his funding of contracts for which no services were performed; all three agreed to cooperate with the ongoing investigation of Mariano. United States v. Dutta Gupta, CR No. 11-63ML (D.R.I. Apr. 18, 2011) (ECF No. 16); United States v. Spencer, CR No. 11-100ML (D.R.I. June 17, 2011) (ECF No. 5); United States v. Nagle, CR No. 11-140ML (D.R.I. July 29, 2011) (ECF No. 2). On June 21, 2012, a superseding indictment against Mariano, his father and his female companion was returned by the grand jury. Mariano, CR No. 12-61-01ML (D.R.I. June 21, 2012) (ECF No. 43).

The superseding indictment alleged that Mariano used his influence as a Navy insider to steer Navy contracts to entities that became conduits for dummy invoices and the payment of kickbacks. Mariano, CR No. 12-61-01ML (D.R.I. June 21, 2012) (ECF No. 43). It charged conspiracy to commit theft of government property, wire fraud and bribery (Count 1), theft of government property (Count 2), wire fraud (Counts 3 to 27), bribery (Count 32), extortion (Count 33) and tax evasion (Counts 34 to 37). On the brink of trial, on May 30, 2013, Mariano pled guilty to conspiracy to commit theft of government property, theft of government property and tax evasion for the 2007 tax year. Mariano, CR No. 12-61-01ML (D.R.I. May 30, 2013)

(ECF No. 155).  During the plea colloquy with the Court, Mariano admitted that he was an "organizer, leader, manager or supervisor" of a criminal scheme involving "fraudulent invoices . . . submitted at Mr. Mariano's direction," and that "[u]pon receipt of the funds [a coconspirator] made payments to others as directed by Mr. Mariano," and "delivered cash from Navy contracts to Mr. Mariano on a biweekly basis."  Mariano, CR No. 12-61-01ML (D.R.I. May 30, 2013) (ECF No. 112 at 24, 36-37, 39).

While awaiting sentencing, Mariano filed a document with this Court and the Department of Justice Office of Professional Responsibility, in which he denied the material facts and responsibility for his conduct.  Mariano, CR No. 12-61-01ML (D.R.I. Nov. 1, 2013) (ECF No. 155).  As a result, the government did not ask the Court to give Mariano credit for acceptance of responsibility as it had agreed to do in the plea agreement, leaving him exposed to the unreduced guidelines range of 97 to 121 months.  Mariano, CR No. 12-61-01ML (D.R.I. Oct. 24, 2013) (ECF No. 123).  Over Mariano's objection, on November 1, 2013, the Court sentenced Mariano to 120 months (ten years) and ordered him to pay $17.9 million in restitution to the Navy. Mariano, CR No. 12-61-01ML (D.R.I. Nov. 1, 2013) (ECF No. 155).  After this harsh sentence was imposed, the counts for bribery, extortion and conspiracy to commit bribery were dismissed pursuant to the plea agreement.  Mariano, CR No. 12-61-01ML (D.R.I. Nov. 1, 2013) (ECF No. 135).

Mariano appealed the sentence, contending that the appeal waiver in the plea agreement should not apply because the government did not give him credit for acceptance of responsibility; the First Circuit disagreed, noting that "the government's obligation to recommend [a sentencing reduction] was conditional on [Mariano's] continued acceptance of responsibility through sentencing, a condition which the government and the court reasonably

concluded did not occur." Mariano, CR No. 12-61-01ML (D.R.I. Oct. 9, 2014) (ECF No. 162) (First Circuit Judgment).

Meanwhile, the civil *qui tam* complaint remained sealed until January 2013, and remained stayed until August 2013, when the United States filed a notice of election to intervene with respect to the claims against Mariano and some but not all of the other defendants; after settling with other defendants, but not with Mariano, the United States withdrew its intent to intervene and exited the civil case on January 10, 2014. ECF No. 47. On January 17, 2014, the Relators filed a Second Amended Complaint that repeats substantially the same allegations as were asserted by their prior *qui tam* complaints, but with a trimmed list of defendants, leaving only Mariano and three others, as to whom the United States had either declined to intervene or withdrawn its intervention. ECF No. 49. In substance, this *qui tam* complaint reflects the facts limning the scheme as laid out in various guilty pleas of Mariano and his coconspirators. As to Mariano, the facts that he admitted in his plea colloquy mirror the facts in the *qui tam* complaint – only the legal labels are somewhat different, in that Mariano pled guilty to theft from the government, while bribery and extortion were dismissed pursuant to the plea agreement. The *qui tam* complaint continues to use those labels.

On March 21, 2014, Mariano filed his Answer and Counterclaim to the Second Amended Complaint (ECF No. 62). This counterclaim is challenged by the Relators' motion to dismiss.

## II.    MARIANO'S COUNTERCLAIM[4]

---

[4] Except as otherwise indicated, these are the allegations laid out in Mariano's counterclaim. In considering this motion to dismiss, I take as true all well-pleaded factual allegations and afford Mariano the benefit of all reasonable inferences. Butler v. Balolia, 736 F.3d 609, 612 (1st Cir. 2013). I note that Mariano appended to his surreply to the motion to dismiss a voluminous document entitled "Prosecutorial Misconduct and Investigative Malfeasance Document Prepared for the Department of Justice Office of Professional Responsibility." ECF No. 80-1, -2, -3. I have not considered this document because to do so would require me to convert this motion to one for summary judgment, which I decline to do. See Yagoozon, Inc. v. Kids Fly Safe, No. CA 14-040 ML, 2014 WL 3109797, at *3-4 (D.R.I. July 8, 2014) (court must be cautious in converting motion to dismiss to summary judgment when parties present matters outside the pleadings). This document is apparently the same one that Mariano submitted to

Because he is *pro se*, Mariano's counterclaim must be read with an "extra degree of solicitude" and be liberally construed. Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991). Mindful of that principle, despite Mariano's failure to lay out counts or clearly articulated claims in his *pro se* counterclaim, the Relators have distilled the counterclaim down to the following set of claims: (1) malicious prosecution, (2) defamation, and (3) violation of federal privacy laws, the Privacy Act of 1974, 5 U.S.C. § 522a(g)(1), the E-Government Act of 2002, 44 U.S.C. § 3601, and the Federal Information Security Management Act of 2002, 44 U.S.C. § 3541. Based on Mariano's acquiescence with this list of his claims at oral argument, I use it as the framework to analyze the viability of the counterclaim under Fed. R. Civ. P. 12(b)(6).

The malicious prosecution claim seems grounded in Mariano's allegation that the Relators "due to their negligence . . . and incendiary allegations" spawned a criminal investigation of bribery and kickbacks "wherein uncorroborated false and perjured statements to federal agents by [coconspirators] and others still remain part of the court record." ECF No. 62 ¶ 35. In Mariano's view, Relator Rekha Vasudeva became a whistleblower only after her company refused to increase her salary and "not one moment beforehand." Id. ¶ 33. The counterclaim contends that Mariano never met or communicated with the Relators, yet they have "maliciously pursued" him and ruined his family and career based on uncorroborated misrepresentations. Id. ¶¶ 39-40. As a result, the counterclaim alleges:

> The United States of America, due to [its] insistence on covering up [its] grossly inadequate understanding of the facts in this case allowed uncorroborated and incendiary allegations from [the Relators] to spawn into a criminal investigation wherein uncorroborated false statements to federal agents along with perjured

---

this Court after his guilty plea, but before he was sentenced. Because of the inconsistency between his plea and this document, the government did not recommend any reduction for acceptance of responsibility, and this Court imposed, and the First Circuit affirmed, a sentence with no reduction for acceptance of responsibility. Mariano, CR No. 12-61-01ML (Nov. 1, 2013) (ECF No. 134). At sentencing, this Court found that this document contradicts the facts admitted by Mariano in his plea. Mariano, CR No. 12-61-01ML (D.R.I. Nov. 1, 2013) (ECF No. 155 at 16-19). Accordingly, I do not recommend that Mariano be given an opportunity to amend to add the content of this document to his counterclaim because of the futility of doing so.

grand jury testimony and perjured statements served as the basis to defame and
otherwise wrongfully accuse [Mariano] of masterminding a bribery and kickback
scheme that never occurred and to which [Mariano] never entered a plea to in the
criminal case . . . as these charges were dismissed . . . .

ECF No. 62 ¶ 38.

The defamation claim arises from the "materials included in the Complaint filed with the

USAO in Georgia and Rhode Island and contained in . . . Rekha Vasudeva's affidavit along with

an investigative report generated by a company hired by the Vasudeva's attorneys [that] contain

false, inaccurate, derogatory, defamatory and uncorroborated evidence/information regarding

[Mariano] and otherwise have no basis in fact." Id. ¶ 16. The counterclaim alleges that the

Relators "have otherwise provided false statements to federal agents and to the Court through

this Complaint," and that the Relators "defame and otherwise wrongfully accuse [Mariano] of

masterminding a bribery and kickback scheme that never occurred;" for example, the

counterclaim charges that the Relators met with prosecutors and agents from the FBI, Navy and

IRS on October 27, 2009, but those agencies never followed up with the Navy and any other

agency to substantiate the Relators' false allegations. Id. ¶¶ 23, 34, 38.

The final allegation asserts that materials that the Relators provided to the government

contained "un-redacted social security numbers and other Personally Identifiable Information

(PII) for various parties" in violation of the Privacy Act of 1974, the E-Government Act of 2002,

and the Federal Information Security Management Act of 2002. Id. ¶¶ 17-22. The counterclaim

does not say that Mariano's personal information was disclosed or that he believes that he

experienced any injury as a result of the exposure of personal information.

## III.    STANDARD OF REVIEW

Rule 12(b)(6) permits this Court to dismiss an action for failure to state a claim upon

which relief can be granted. See Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009)

(citing Fed. R. Civ. P. 12(b)(6)).  To survive a motion to dismiss, a complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests and allege a plausible entitlement to relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007).  A plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  In evaluating a Rule 12(b)(6) motion, the court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor.  Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555 (court is "not bound to accept as true a legal conclusion couched as a factual allegation").  Despite his *pro se* status, Mariano must comply with these requirements – that is, he must plausibly allege that the Relators are liable to him under an actionable legal theory.  See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009); Hodge v. Murphy, 808 F. Supp. 2d 405, 408 (D.R.I. 2011) ("Although a court must review pleadings of a *pro se* Plaintiff liberally, the court need not credit bald assertions or unverifiable conclusions.") (citation omitted).

## IV.    ANALYSIS

The first issue for resolution is the choice of law applicable to Mariano's counterclaims.  The Relators cite both to the law of Rhode Island and to that of Georgia, without taking a position on which controls, seemingly based on the lack of any material difference between them; Mariano follows suit.  If the tenor of the briefing constitutes an agreement that Rhode Island controls, there is no need to go further.  Estate of Frusher v. Abt Associates, Inc., 643 F.

Supp. 2d 220, 226 n.3 (D.R.I. 2009) (when parties agree that Rhode Island law applies, court may rely on their agreement) (citing Moores v. Greenberg, 834 F.2d 1105, 1107 n. 2 (1st Cir. 1987)). To avoid the ambiguity left by the parties, I will grapple directly with the issue, mindful that this Court must employ Rhode Island's choice-of-law framework in determining what state law pertains and that Rhode Island has adopted an interest-weighing analysis to choose between the conflicting tort law of two or more states. Magnum Defense, Inc. v. Harbour Grp. Ltd., 248 F. Supp. 2d 64, 69 (D.R.I. 2003). Because Rhode Island not only is the forum state, but also is the locus both of Mariano's wrongful conduct and of the criminal investigation and prosecution launched by the communications he now labels as defamatory and malicious, I find that the balance of interests favors Rhode Island. Accordingly, this Court will apply Rhode Island law to the dispute. Id.

A.     **Malicious Prosecution**

Viewed with the leniency appropriate for pleadings of *pro se* litigants, Mariano's malicious prosecution counterclaim is a frontal attack on the Relators, seeking to hold them liable for launching the criminal investigation that culminated in his guilty plea and sentence to ten years of incarceration.[5] He contends that they maliciously provided false, inaccurate, derogatory, defamatory and uncorroborated evidence/information to the government, ECF No. 62 ¶ 16, that "spawned into a criminal investigation . . . that wrongfully accuse[s] [Mariano] of masterminding a bribery and kickback scheme that never occurred . . . ." Id. ¶ 38. He explains away his guilty plea by arguing that he pled only to theft from the government, conspiracy to

---

[5] To the extent that Mariano's malicious prosecution cause of action is reframed as a challenge to the Relators' *qui tam* action, it fails out of the gate because that case remains active and has not terminated favorably to Mariano. While malicious prosecution may be based on a prior civil proceeding, a case that remains pending cannot serve as the basis for a malicious prosecution claim. Salvadore v. Major Elec. & Supply, Inc., 469 A.2d 353, 357 (R.I. 1983); Nagy v. McBurney, 392 A.2d 365, 368 (R.I. 1978). This theory of Mariano's claim will not be discussed further in this report and recommendation.

commit theft from the government and tax evasion, and that the counts charging extortion, bribery and wire fraud were dismissed. Id. This asservation – that the Relators may be held liable for the injuries he suffered as a result of the government's criminal prosecution of him for the three dismissed charges – is the overarching theme of the counterclaim and the essence of what must plausibly state a claim for it to survive. Because this malicious prosecution theory fails to state a claim, it should be dismissed for the reasons that follow.

Malicious prosecution is a common law cause of action long recognized in Rhode Island that allows a suit for damages arising from a prior criminal proceeding. Hillside Assocs. v. Stravato, 642 A.2d 664, 667 (R.I. 1994) ("if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution"). Rhode Island courts disfavor such actions because "they tend to deter the prosecution of crimes and/or to chill free access to the courts." Clyne v. Doyle, 740 A.2d 781, 782 (R.I. 1999); see Horton v. Portsmouth Police Dep't, 22 A.3d 1115, 1121 (R.I. 2011); Henshaw v. Doherty, 881 A.2d 909, 915 n.5 (R.I. 2005). To recover for damages for malicious prosecution, a claimant must prove all of the following elements: (1) that the defendant initiated a prior criminal action against him or her, (2) that the defendant lacked probable cause to initiate that proceeding, (3) that the defendant brought the proceeding "maliciously," and (4) that the proceeding terminated in the claimant's favor. Soares v. Ann & Hope of R.I., Inc., 637 A.2d 339, 345 (R.I. 1994). Assuming that Mariano has colorably pled that the *qui tam* action and the Relators' subsequent cooperation with the government's criminal investigation satisfies the first – "initiation" – prong, Mariano must also plausibly plead facts to establish both the second and fourth elements, that there was an absence of probable cause to initiate the criminal proceedings against him,[6] and that the

---

[6] For purposes of alleging malicious prosecution, the third element, malice, may be subsumed into the element of lack of probable cause, in that the court may infer malice from the lack of probable cause. See Nagy, 392 A.2d at

criminal proceedings ended favorably to him.  <u>See</u> <u>Hill v. R.I. State Emps.' Ret. Bd.</u>, 935 A.2d 608, 613 (R.I. 2007).  His counterclaim fails on both elements.

The probable cause determination relies on a flexible "totality-of-the-circumstances" analysis.  <u>Horton</u>, 22 A.3d at 1122; <u>see</u> <u>Plumhoff v. Rickard</u>, 134 S. Ct. 2012, 2021-22 (2014) (reasonableness of police conduct measured in context in light of danger to public safety posed by circumstances).  Because malicious prosecution is a disfavored tort, it has long been settled law that the plaintiff must prove the lack of probable cause (and the related existence of malice) by "clear proof," that is, by a higher quantum than a mere preponderance of the evidence.  <u>Hill</u>, 935 A.2d at 613; <u>Clyne v. Doyle</u>, No. C.A. 95-4499, 1998 WL 798928, at *2 (R.I. Super. Ct. Nov. 6, 1998), <u>aff'd</u>, 740 A.2d 781 (R.I. 1999).  Consistent with this policy, when the initiation of a criminal prosecution is followed by a grand jury indictment, Rhode Island law presumes the existence of probable cause for purposes of a subsequent claim of malicious prosecution.  <u>See</u> <u>Horton</u>, 22 A.3d at 1121, 1124; <u>Hill</u>, 935 A.2d at 613-14; <u>Solitro v. Moffatt</u>, 523 A.2d 858, 863 (R.I. 1987).  To rebut the presumption of probable cause arising from a grand jury indictment, the claimant must allege that the indictment was procured by perjury or other undue means.  <u>See</u> <u>Bourg v. Bristol Boat Co.</u>, 705 A.2d 969, 971 (R.I. 1998).  To clear this hurdle, the malicious prosecution claimant must set out facts that plausibly establish or permit the inference that the target of the claim committed or suborned perjury or fraud that materially tainted the grand jury; without such a plausible factual allegation, a felony indictment returned by a grand jury is *prima facie* evidence of probable cause for initiating the criminal prosecution and fatal to a tort claim of malicious prosecution.  <u>Solitro</u>, 523 A.2d at 863.

---

367; <u>Defusco v. Brophy</u>, 311 A.2d 286 n.1 (R.I. 1973).  Because Mariano's malicious prosecution claim fails due to the lack of plausible evidence of the second and fourth elements, I do not separately discuss the element of malice, except to note that the counterclaim fails adequately to allege malice in the context of the defamation claim.  <u>See</u> *infra* n.11.

In this case, the criminal investigation launched by the Relators resulted in Mariano's indictment by the grand jury on April 26, 2012, for theft of government property, wire fraud, bribery, extortion, tax evasion and conspiracy. Mariano, CR No. 12-61-01ML (D.R.I. Apr. 26, 2012) (ECF No. 27). Two months later, on June 21, 2012, the grand jury returned a superseding indictment that included the same charges. Mariano, CR No. 12-61-01ML (D.R.I. June 21, 2012) (ECF No. 43). While his counterclaim is replete with the accusation that the Relators provided information to the prosecutors in Georgia and Rhode Island that was "false, inaccurate, defamatory, derogatory and uncorroborated," Mariano does not allege that they ever testified before the grand jury. To the contrary, his brief filed in connection with this motion emphatically claims that they did not. ECF No. 80 at 6. More importantly, the counterclaim fails plausibly to allege that the grand jury that found probable cause to indict Mariano for bribery and extortion based the indictment on perjury committed or suborned by the Relators.[7] This gap is fatal to his malicious prosecution claim. Accordingly, Mariano's malicious prosecution claim fails as a matter of law because he fails to plead the element of lack of probable cause to criminally charge him with bribery and extortion.

While the analysis could end here, the other missing element of malicious prosecution is worth highlighting as it is the nub of Mariano's argument. He contends that the charges of bribery and extortion terminated favorably to him, permitting a malicious prosecution claim, because they were dismissed after he was sentenced on the charges to which he pled guilty. This conclusion is wrong. The law fleshing out the tort of malicious prosecution unambiguously

---

[7] Mariano does make the conclusory allegation that there was perjured testimony before the grand jury. ECF No. 62 ¶ 38. However, he includes nothing to nudge the pleading close to the realm of a plausible claim that the Relators committed or suborned grand jury perjury such that this Court must look past the indictments to analyze whether there nevertheless is probable cause to support Mariano's criminal prosecution. Twombly, 550 U.S. at 570.

establishes that these circumstances do not constitute "favorable termination." Accordingly, Mariano's malicious prosecution claim fails on this element too.

It is well settled in Rhode Island that malicious prosecution is foreclosed when the underlying criminal case terminated with a plea. Brennan v. Town of South Kingstown, No. CA 10-186 S, 2011 WL 1898248, at *3 (D.R.I. Apr. 14, 2011) (malicious prosecution claim fails because *nolo contendere* plea precludes proof that criminal proceeding terminated in favor of claimant). No Rhode Island court has directly addressed whether the result should be different if the plea requires the criminal defendant to admit guilt to some counts, while others are dismissed. Nevertheless, a survey of decisions by courts that have dealt with the issue makes plain that such a criminal defendant cannot sue for malicious prosecution. The survey begins in neighboring Massachusetts, whose law of malicious prosecution has been found to be analogous to that of Rhode Island. See Costa v. Rasch, C.A. No. 11-336L, slip op. at 15 n.18 (D.R.I. July 29, 2014).

In Massachusetts, a plea of guilty to certain charges, following which related charges are dismissed, is "a compromised dismissal [that] does not constitute a favorable termination of the criminal proceedings" for purposes of a malicious prosecution claim. Parker v. Town of Swansea, 270 F. Supp. 2d 92, 104 (D. Mass. 2003); see Simmons v. City of Brockton, No. 93-12201-RWZ, 1994 WL 725181, at *1 (D. Mass. Dec. 15, 1994) (criminal case dismissed based on defendant's stipulation that she would stop running illegal boarding house; malicious prosecution claim dismissed as criminal proceeding not favorably terminated). The focus of the court's inquiry must be on whether the dismissal of some of the charges against a criminal defendant evidences actual innocence with respect to the underlying conduct. If the dismissal is simply based on the plea to related charges, it does not evidence innocence with respect to the

dismissed charges, but rather constitutes a compromise of the type which the system encourages to resolve a busy docket.  Parker, 270 F. Supp. 2d at 104.  Under such circumstances, "an action for malicious prosecution is barred because the guilty plea is inconsistent with innocence."  Id. (citing Wynne v. Rosen, 464 N.E.2d 1348, 1350 (Mass. 1984)).

The law of other states is similar.  For example, in Kossler v. Crisanti, 564 F.3d 181 (3d Cir. 2009), the court applied the law of Pennsylvania and held that the viability of a malicious prosecution claim depends on whether, when considering the judgment as a whole, the termination of the criminal matter "reflect[s] . . . the plaintiff's innocence of the *misconduct* alleged in the lawsuit."  Id. at 188 (quoting 52 Am. Jur. 2d Malicious Prosecution § 32 (Supp. 2007)) (emphasis in original).  The court's focus must be on whether there has been favorable termination of the "proceeding," and not merely on one charge or offense.  Id.  Even acquittal on one charge is not a favorable termination if the judgment as a whole does not reflect innocence with respect to underlying conduct that the charges sought to punish.  Id. at 189-92 (judgment against malicious prosecution claimant affirmed).  These cases make clear that withdrawal of certain criminal charges pursuant to a compromise or plea agreement does not constitute favorable termination and cannot support a claim of malicious prosecution.  See Uboh v. Reno, 141 F.3d 1000, 1004-5 (11th Cir. 1998) (applying law of Georgia); Wims v. New York City Police Dep't, No. 10 Civ. 6128(PKC), 2011 WL 2946369, at *3 (S.D.N.Y. July 20, 2011) (applying law of New York).

It is not a stretch to find that Rhode Island, if faced with this question, would apply the principles laid out in these cases.  These cases treat the matter as settled law; more importantly, this Court was not able to find any contrary authority.  See Emhart Indus., Inc. v. Home Ins. Co., 515 F. Supp. 2d 228, 264 (D.R.I. 2007) (federal court may apply rule of law that state would

adopt if faced by the issue); <u>56 Assocs. Ex rel. Paolino v. Frieland</u>, 89 F. Supp. 2d 189, 191

(D.R.I. 2000) (if "better reasoned authorities" from other jurisdictions provide a clear path on

state law, federal court may apply it). Based on these principles, it is plain that Mariano's

malicious prosecution claim fails despite the dismissal of the charges of bribery and extortion;

they are related charges that were dismissed pursuant to a plea that acknowledged guilt for the

conduct on which they were based. Their dismissal is not evidence of innocence, but rather of a

compromise. Accordingly, the dismissal of these related charges does not constitute a favorable

termination. Rather, together with the presumption of probable cause arising from the

indictments, his guilty plea dooms Mariano's counterclaim for malicious prosecution. I

recommend that it be dismissed.

### B.    Defamation

The threshold flaw in Mariano's defamation claim[8] is that it is really just the malicious

prosecution claim repackaged with a different label.[9] Courts considering the viability of a

separate claim for defamation in a pleading plainly grounded in malicious prosecution conflate

the two – when malicious prosecution is not viable because there was probable cause and the

criminal proceeding did not terminate favorably to the claimant, these courts hold that the

foundational charge of defamation should also be dismissed. <u>See</u> <u>Hunt v. Beaudoin</u>, No. CV

940544174, 1997 WL 568037, at *1 (Conn. Super. Ct. Sept. 3, 1997) (cause of action

"characterized as slander and defamation but comes close to stating an action for malicious

---

[8] The elements of a cause of action for defamation are: (1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence (or reckless disregard for public figures); and (4) damages. <u>Alves v. Hometown Newspapers, Inc.</u>, 857 A.2d 743, 751 (R.I. 2004); <u>Lyons v. R.I. Pub. Emps. Council 94</u>, 559 A.2d 130, 134 n.2 (R.I. 1989).

[9] It must be noted that Mariano's counterclaim does not lay out a separate count for defamation. Rather, it was the Relators who struggled to come up with labels to append to the pleading so that they could marshal legal arguments to challenge it.

prosecution insofar as the statements to the police are concerned"); McGranahan v. Dahar, 408 A.2d 121, 128 (N.H. 1979) ("The two actions are complementary; where an action for malicious prosecution will lie, there is no need for the additional remedy in defamation.").  These cases compel the conclusion that Mariano's defamation claim lacks plausibility for the same reason why his malicious prosecution claim should be dismissed – the criminal proceeding launched by the supposedly defamatory statements ended in his admission of guilt to the charge that he was the mastermind of a criminal scheme involving fraudulent invoices that has had a devastating impact on the Navy, the community and Mariano's family.

Apart from this fundamental defect, Mariano's defamation counterclaim fails to state a claim for a host of other reasons, any one of which is sufficient to justify dismissal.  The explication of each follows.

First, the pleading does not actually identify any specific statements that are alleged to be defamatory.  Rather, it is filled with conclusory statements accusing the Relators of defamation, but is devoid of factual specifics.[10]  For example, the Counterclaim alleges that "[a]ll materials included in the Complaint . . . contain false, inaccurate, derogatory, defamatory and uncorroborated evidence/information," ECF No. 62 ¶ 16; "[t]he claims . . . are factually baseless and replete with lies which can be invalidated by the government's own evidence," id. ¶ 29; and

---

[10] During the hearing on this motion, Mariano tried to cure this defect by listing the Relators' statements that he considers defamatory.  For the most part, his list amounted to quibbles with the accuracy of the Relators' references to other entities; as to these, Mariano lacks standing.  Otherwise, the claim of defamation boils down to the familiar plaint that Mariano pled guilty only to theft of government property, did not admit bribery or extortion, yet the Relators continue to accuse him of bribery and extortion.  In addition, he asserts that he did not have the requisite authority with respect to Navy contracts, yet the Relators continue to allege that he did.  The supposedly false accusation of bribery and extortion is as unavailing as the foundation for a defamation claim as it was to support the claim of malicious prosecution.  Similarly, Mariano's insistence that he lacked the authority to award contracts so that the contrary claim is defamatory rings hollow in light of allegations in Count I of the superseding indictment (to which Marino pled guilty) that he had the "authority to request additional funding on certain Navy contracts, . . . [and] was also responsible for monitoring the quality of work being performed on certain Navy contracts."  Mariano, CR No. 12-61-01ML (D.R.I. June 21, 2012) (ECF No. 43 ¶ 3).  Accordingly, it would be a futile exercise for this Court to allow Mariano an opportunity to amend his counterclaim to cure his conclusory pleading of defamation.

the Relators "defame and otherwise wrongfully accuse [Mariano] of masterminding a bribery and kickback scheme that never occurred."  Id. ¶ 38.  Such mechanistic recitals of the elements of a claim will not suffice.  Twombly, 550 U.S. at 570.  There is nothing in Mariano's counterclaim other than conclusory assertions that the Relators defamed him.  Without any actual factual recitations of actual defamatory statements, the Relators are not put on notice of statements that might constitute defamation.  Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (pleading must put defendant on notice of claims against it).

Second, Mariano is judicially estopped by his plea from asserting the truth of any facts inconsistent with the facts he admitted as part of his plea, including during his plea colloquy. See Thore v. Howe, 466 F.3d 173, 185 (1st Cir. 2006) (litigant estopped from arguing facts inconsistent with his plea colloquy in a subsequent proceeding).  The Relators' 2006 *qui tam* complaint laid out the core factual theory that travelled substantially intact throughout the later iterations of the complaint and became the underpinning of the criminal indictments culminating in the guilty plea.  Specifically, Mariano admitted during the plea colloquy that he was an "organizer, leader, manager or supervisor" of the criminal activity, that he orchestrated Navy payments to end up at with his coconspirator's companies, and that "[the coconspirator] delivered cash from Navy contracts to Mr. Mariano on a biweekly basis."  Mariano, CR No. 12-61-01ML (D.R.I. May 30, 2013) (ECF No. 112 at 24, 36-37, 39).  Mariano's conclusory allegation that all of the Relators' allegations are defamatory amounts to a wishful fantasy that he is estopped from asserting.  Thore, 466 F.3d at 185.  The counterclaim for defamation fails as a matter of law because Mariano cannot deny the truth of the Relators' statements.[11]  See R.I. Gen. Laws § 9-6-9; Healey v. New England Newspapers, Inc., 555 A.2d 321, 325 (R.I. 1989).

---

[11] Mariano argues that truth is not a defense to defamation if the statement was made maliciously, citing R.I. Const. art. I, § 20; R.I. Gen. Laws § 9-6-9.  To factually buttress his pleading of the element of malice, he points to his

Third, Mariano's conviction of theft from the government and tax evasion, coupled with his public confession at the plea hearing, <u>Mariano</u>, CR No. 12-61-01ML (D.R.I. May 30, 2013) (ECF No. 112 at 33-45), and this Court's public condemnation of him at his sentencing as having behaved with "arrogance and avarice," and as causing "devastation because [he] wanted to be a big shot, " <u>Mariano</u>, CR No. 12-61-01ML (D.R.I. Nov 1, 2013) (ECF No. 155 at 37), collectively render him "libel proof." <u>See</u> <u>Dewitt v. Outlet Broad., Inc.</u>, No. C.A. NC 98-0196, 1999 WL 1334932, at *3-5 (R.I. Super. Ct. Dec. 17, 1999). As a result, Mariano is an individual whose criminal record is such that, even if he were defamed, he could "only recover a peppercorn" for his alleged lost reputation. <u>See</u> <u>id.</u> at *1. Put differently, like the defamation plaintiff in <u>Dewitt</u>, Mariano's reputation is such that he is "libel-proof as a matter of law" and therefore cannot sue his accusers for defamation. <u>Id.</u> at *5.

Finally, the communications of the Relators are all protected from the charge of defamation because they are absolutely privileged. Taking Mariano's allegations as true, all of the challenged statements were made in one of three contexts: (1) in filings in this *qui tam* action, (2) in the Relators' investigative report, which the FCA requires be served on the government pursuant to 31 U.S.C. § 3730(b)(2), and (3) during an October 27, 2009, interview conducted by the prosecuting Assistant United States Attorneys in connection with the criminal proceeding. Importantly, Mariano does not allege that any of the challenged statements are immaterial or

---

allegation that the Relators did not raise concerns about Mariano's illegal scheme until one of them was denied a raise she had requested from her company. ECF No. 62 ¶ 33. However, Mariano does not allege that he played any role in the decision to deny her raise; rather, he pleads that he has never met or communicated with the Relators. ECF No. 62 ¶ 8. These allegations are fatal to Mariano's claim of maliciousness. Under Rhode Island law, maliciousness for purposes of the tort of defamation means "malice in the popular sense, the motive of personal spite or ill will." <u>Ventetuolo v. Burke</u>, 596 F.2d 476, 485 (1st Cir. 1979) (citing <u>Hayden v. Hasbrouck</u>, 84 A. 1087, 1089-90 (R.I. 1912); <u>see</u> <u>Noonan v. Staples</u>, 556 F.3d 20, 30 (1st Cir. 2009) (applying Massachusetts law, malice established by specific facts demonstrating that the tortfeasor singled out the claimant to humiliate him). Mariano's pleading that the Relators did not even know him renders the specter of malice towards him implausible.

irrelevant either to the criminal proceeding or to the *qui tam* proceeding.[12]  Because all of these

communications were uttered either in pleadings filed in this *qui tam* action or in support of the

government's investigation (whether in the investigative report or in the interview by

prosecutors),[13] a defamation claim based on them is barred because they are absolutely

privileged.  United States ex rel. Head v. Kane Co., 668 F. Supp. 2d 146, 155-56 (D.D.C. 2009);

see Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc., 774 A.2d 332, 338

(D.C. 2001) (overwhelming majority of states have long recognized absolute privilege for

statements made over course of judicial proceeding); Restatement (First) of Torts § 587 (2009).

        The absolute privilege arises to protect communications made during judicial proceedings

or made to prosecutors investigating a criminal proceeding from the charge of defamation

because of the importance of the public interest in encouraging such communications.  See

Francis v. Gallo, 59 A.3d 69, 71 (R.I. 2013) ("statements made in judicial proceedings are

privileged, and thus cannot form the basis for a defamation claim"); Ims v. Town of Portsmouth,

32 A.3d 914, 927 (R.I. 2011) ("Generally, absolute privilege is afforded in the context of judicial

proceedings to encourage witnesses to come forward and speak freely about civil or criminal

matters.").  The absolute privilege covers not only statements made in court or in writings filed

with the court, but also protects statements made to a prosecuting authority, whether formal or

---

[12] If Mariano had asserted that the allegedly defamatory communications are not relevant or material either to the *qui tam* proceeding or to his own criminal prosecution, some states would hold that the absolute privilege does not apply.  Francis v. Gallo, 59 A.3d 69, 71 n.2 (R.I. 2013) (majority rule provides absolute immunity only to statements that are material and relevant; minority rule provides unconditional protection without regard to relevancy).  Rhode Island has not spoken on this point.  Id.

[13] The Relators sought to add an additional reason why their interview by prosecutors was absolutely privileged – attaching grand jury subpoenas to their brief in connection with this motion, they argued that the interview was a prelude to grand jury testimony.  See Taylor v. Streicher, 465 F. App'x 414, 422 (6th Cir. 2012) (grand jury testimony is protected by absolute privilege).  Mariano counters that the Relators were never called to testify before the grand jury.  I decline to consider the subpoenas or the applicability of an absolute privilege afforded to grand jury testimony because doing so would require me to convert this motion to a motion for summary judgment.  See Fed. R. Civ. P. 56(d).  Further, because the statements made during the interview with prosecutors are absolutely privileged as part of the judicial proceeding, there is no need to grapple with whether the grand jury privilege also applies.

informal, because such communications are part of the initial steps in a judicial proceeding and are appropriately entitled to absolute immunity from an action for defamation. McGranahan, 408 A.2d at 127-29 (statements to prosecutors should not be deterred by fear of defamation claims); see Burke v. Town of Walpole, 405 F.3d 66, 94 (1st Cir. 2005) (statements to prosecutors are absolutely privileged if made in context of proposed judicial proceeding; interpreting Massachusetts law). While Rhode Island may apply only a conditional privilege if the statement is made just to law enforcement officers, Kissell v. Dunn, 793 F. Supp. 389, 393 (D.R.I. 1992), when, as here, the utterances are made directly to the prosecutor, courts uniformly treat them as absolutely privileged. Stinson v. City of Milwaukee, No. 09-C-1033, 2013 WL 5447916, at *16 (E.D. Wisc. Sept. 30, 2013) (all words published or spoken during judicial proceedings and all statements made to district attorney relating to matter being investigated are absolutely privileged even if false or malicious); Piccone v. Bartels, C.A. No. 11-10143-MLW, 2012 WL 4592770, at *9 (D. Mass. Sept. 29, 2012) (statements made to prosecutors prior to trial, if made leading up to or in context of proposed judicial proceeding, are absolutely privileged; such cooperation with government is "part of a continuous transaction where disclosure should occur without fear of a civil action for defamation").

To be clear, there is no *per se* ban on counterclaims by a *qui tam* defendant as long as they do not amount to a claim for contribution or indemnification. United States ex rel. Madden v. Gen. Dynamics Corp., 4 F.3d 827, 830-31 (9th Cir. 1993) (denial of *qui tam* defendant's right to bring counterclaim that may be compulsory offends due process); United State ex rel. Miller v. Billl Harbert Int'l Constr., Inc., 505 F. Supp. 2d 20, 25-26 (D.D.C. 2007) (unavailability of contribution and indemnification counterclaims under FCA beyond peradventure). Nevertheless, when the claims themselves cannot survive the scrutiny of plausibility, they must be dismissed

for failure to state a claim. With the admissions made during his guilty plea prominent in the background, Mariano has failed to plead anything that plausibly alleges defamation. To the extent that his counterclaim asserts the tort of defamation, I recommend that it be dismissed because it fails to state a claim.

C.       Federal Privacy Laws

Mariano accuses the Relators of violating the Privacy Act of 1974, 5 U.S.C. § 522a(g)(1) (the "Privacy Act"), the E-Government Act of 2002, 44 U.S.C. § 3601 (the "E-Government Act"), and the Federal Information Security Management Act of 2002, 44 U.S.C. § 3541 ("FISMA"). ECF No. 62 ¶¶ 18, 19. The operative paragraph of the counterclaim states that the Relators' *qui tam* complaint and investigative report "contained un-redacted social security numbers and other Personally Identifiable Information (PII) for various parties including some individuals living in North Providence and Florida who are not at all related to this matter." Id. ¶ 17. Based on this factual allegation, Mariano contends that the Relators violated the Privacy Act and the E-Government Act, "which impose[] on federal agencies responsibilities for protecting personal information," and violated FISMA, which "requir[es] agencies to develop, document and implement agency wide programs to provide security for their information and information systems . . . which include personally identifiable information . . . ." Id. ¶¶ 18, 19.

In essence, Mariano's theory of liability seems to be that the Relators provided protected personal information to the government under seal, which the government later disclosed during discovery in the criminal cases, so the Relators should be liable for the disclosure. Id. ¶¶ 18-22, 26. Much of the substantive material in the counterclaim focuses on the release of the personal information of a Floridian whose counsel complained to the government about it. Id. ¶¶ 27-28. The counterclaim leaves the reader to speculate whether Mariano even has standing to assert

these privacy claims – nowhere does he allege that his personal information was disclosed. Nevertheless, in the interest of efficiency, I assume that it was and examine the merits of these claims. Finding them without merit, I recommend that they be dismissed. The reasons follow.

Mariano cannot bring suit under FISMA and the E-Government Act because those statutes do not authorize a cause of action for private litigants. See 44 U.S.C. §§ 3541-49 (FISMA); id. §§ 3601-06 (the E-Government Act); Sci. Sys. & Applications, Inc. v. United States, PWG-14-2212, 2014 WL 3672908, at *2 (D. Md. July 22, 2014) (no private right of action under FISMA); Zajac v. United States, No. 2:12-cv-230-FtM-29UAM, 2014 WL 2742819, at *7 (M.D. Fla. June 17, 2014) (no private right of action under E-Government Act). And while the Privacy Act does provide a private right of action, claims may only be asserted against the United States. See 5 U.S.C. § 552a(g)(l ); W. v. Genuine Parts Co., No. 3:11-CV-252, 2011 WL 4356361, at *3 (E.D. Tenn. Sept. 16, 2011) ("The private right of civil action created by the Privacy Act of 1974 is specifically limited to actions against agencies of the United States."). Although the Relators brought this qui tam suit in the name of the government, the United States withdrew its intent to intervene and was no longer a party by the time Mariano filed his counterclaim. See United States ex rel. Eisenstein v. City of New York, 556 U.S. 928, 933 (2009) ("The United States . . . is a 'party' to a privately filed FCA action only if it intervenes in accordance with the procedures established by federal law."). Because the United States is not a party to this suit, Mariano's Privacy Act claim also fails to state a claim.

I recommend that Mariano's counterclaims under the E-Government Act of 2002, 44 U.S.C. § 3601, the Federal Information Security Management Act of 2002, 44 U.S.C. § 3541, and the Privacy Act of 1974, 5 U.S.C. § 522a(g)(1), be dismissed.

**V.    CONCLUSION**

For the foregoing reasons, I recommend that the Relators' Motion to Dismiss Mariano's

Counterclaims for Failure to State a Claim be granted.  ECF No. 67.

Any objection to this report and recommendation must be specific and must be served

and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting

party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a

timely manner constitutes waiver of the right to review by the district judge and the right to

appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008);

Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 7, 2014